IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATE OF AMERICA | § § | |
| Vs. | § § | Criminal No. 4:14-CR-43-001 |
| CONRAD ALVIN BARRETT | § § | |

# DEFENDANT'S OBJECTIONS TO THE
# PRE-SENTENCE REPORT (PSR)

**To the Honorable Judge Gray H. Miller:**

**Conrad A. Barrett,** defendant, by and through his attorney of record, George J. Parnham, respectfully asks the Court to consider the following:

## Introduction

On January 23, 2014, a 1-count indictment was filed in the United States District Court for the Southern District of Texas naming Conrad A. Barrett as the defendant. The sole count in the indictment charged Barrett with willfully causing bodily injury to "R.C." because of "R.C.'s " actual and perceived race and color, on or about November 24, 2013.

On June 30, 2015, Barrett pled guilty to Count 1 of the indictment without a plea bargain agreement. A Presentence Report was prepared assessing an offense level of 26 and criminal history category of I. According to the PSR, Barrett's guideline range for imprisonment is 63 to 78 months. Barrett also faces a charge of aggravated assault for the same set of facts in this case in Ft. Bend County, TX.

## A. Factual Additions/Corrections to PSR

### 1. PSR Paragraph #4

Paragraph #4 of the PSR describes how Conrad Barrett revealed his assault on R.C. to Mike and Erin Kugler, an off-duty Sugar Land Arson Investigator and his wife, at a restaurant in Fulshear, TX. This is ultimately the conversation/confession that resulted in Barrett's arrest in this case. Although the paragraph is a largely accurate summary of what occurred, there is a significant and material change that should be made. PSR Paragraph #4 includes the following:

> "He [Barrett], noted he had to 'get so low and drunk' to play the game; however, the couple noticed Barrett did not appear drunk."

This is in subtle but significant contrast to what is reported by Officer Michael McCoy of Fulshear P.D. Following his encounter with Conrad Barrett, Kugler flagged down a uniformed police officer in the parking lot of the restaurant. That officer was Michael McCoy. McCoy is the first person to whom Kugler explained what had just occurred, moments earlier, in the restaurant between himself and Barrett. According to officer McCoy, Kugler's statement was:

> "The man [Barrett] stated that he 'felt horrible for doing this' and 'I will probably go to jail for it.' He [Barrett] further stated that he 'had to get numb' before doing it"

While the PSR tells essentially the same story, clearly there is a significantly different slant to it than what is contained in officer McCoy's report. The PSR includes no reference to Barrett's expression of extreme remorse for what he had done. Furthermore, at the same time the PSR neglects to include the remorse aspect of Barrett's "confession", it also

incorporates a vague assertion that perhaps Barrett might be lying or exaggerating about being intoxicated at the time he committed this offense. Officer McCoy's report, notably, never records **any** observations by Kugler regarding Barrett's level of intoxication at the time of his "confession".

At the time Conrad Barrett was speaking to the Kuglers, he was in fact, both intoxicated and very remorseful for his crime.

### 2. PSR Paragraph 14

This paragraph of the PSR contains information obtained from an interview with the victim in this case. Specifically, the PSR says that, "R.C. was punched so hard he felt the defendant had brass knuckles (although the agents were unable to confirm this)."

The absolute fact is that Barrettt **was not** wearing brass knuckles when he assaulted R.C.. That fact is absolutely "confirmed" by the video of the commission of the offense. The parenthetical contained in the PSR is curious, capricious, and callous.


*B. Objection to Paragraph 24 of the PSR*

### 1. Barrett objects to the 2-level increase pursuant to § 2A2.2(b)(1), alleging that this offense involved more that minimal planning.

U.S.S.G. § 2A2.2 Application Notes 2 gives guidance to when a 2-level upward adjustment is warranted for "more than minimal planning":

> "more than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense, other than conduct to which § 3C1.1 (Obstructing or Impeding the Administration of Justice) applies. For example, waiting to commit the

offense when no witnesses were present would not alone constitute more than minimal planning. By contrast, luring the victim to a specific location or wearing a ski mask to prevent identification would constitute more than minimal planning.

In this case, Conrad Barrett was driving around in his car looking for an African American victim so that he (Barrett) could play "the knockout game". Upon seeing R.C., a 79-year old African American male, Barrett got out of his vehicle, punched the unsuspecting R.C. once in the face knocking him to the ground, and then immediately drove away in his vehicle. Contrary to any attempt to conceal his crime, Barrett showed a self-recorded video of this event to an off-duty police officer in a bar later that day.

As indicated in the PSR, Barrett's phone contained several other videos he recorded that same day while looking for a victim. These videos contain footage of Barrett essentially driving around, looking for a victim, and trying to get up the "courage" to act. They are full of various and nonsensical racist rants, discussion about "the knockout game" itself, and boasting about himself and his "justification", such as it is, for why he is taking this action. The last video is the one containing the assault and describes the full extent of Barrett's planning. On the video he explained "the plan" was to see if he hit a "black person" would it be nationally televised. See PSR at paragraph 10.

The videos contain a great deal of racist remarks, slurs, and stereotypes, and they are highly inflammatory. They do not, however, contain evidence of any planning beyond that which is typical for commission of the offense in its simple form.

**2. Barrett objects to the 7-level increase pursuant to § 2A2.2(b)(3)(C), alleging that the victim sustained "life-threatening or permanent bodily injury".**

The U.S.S.G. § 1B1.1 provides the applicable definitions of the varying degrees of injury contemplated by several guideline provisions throughout the code. At issue in this case are the distinctions between "serious bodily injury" versus "life-threatening or permanent bodily injury".

"*Permanent or life-threatening bodily injury*" means injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent. U.S.S.G. § 1B1.1, Application note 1(L).

Alternatively, "*Serious bodily injury*" means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. U.S.S.G. § 1B1.1, Application note 1(J).

Here, "R.C.", a 79-year old African American male, sustained multiple fractures of his jaw as the result of a single punch to the face from Conrad Barrett's closed fist. According to PSR paragraphs 10 and 11, these injuries required surgery to repair R.C.'s jaws. The surgery involved securing two metal plates with approximately 10 screws to the affected area. R.C. spent approximately 5 days in the hospital before being released to outpatient treatment.

Barrett concedes that the injuries to R.C. fall squarely within the definition of "serious bodily injury" and therefore an increase of 5-levels pursuant to the guidelines

is appropriate in this case. The 7-level increase assigned by the probation department, however, is improper here. The injuries to R.C. were quite clearly not life-threatening. Likewise, there is no evidence to support a finding that the injuries are "permanent" either. The injuries as described by both the medical records and probation department in the PSR all fit squarely into the "serious bodily injury" category as defined by the guidelines.

Barrett respectfully requests the Court reduce this upward adjustment by two levels from an increase of 7-levels to an increase of 5-levels for the reasons stated above. Alternatively, Barrett would ask the Court to find that R.C.'s injuries fall somewhere between "serious bodily injury" and "life-threatening or permanent injury" and assess an increase of 6-levels.

*C. Objection to Paragraph 30 of the PSR – Acceptance of Responsibility*

Paragraph 30 correctly indicates that at the time of the writing of the PSR, Conrad Barrett had not submitted a statement of responsibility to the probation department. That statement is being provided to the probation department contemporaneous with the filing of this document. Barrett respectfully requests a 2-level downward adjustment pursuant to § 3E1.1(a) and an additional 1-level downward adjustment pursuant to §3E1.1(b).

*D. Factors Warranting Departure*

**1.** Conrad Barrett was suffering from Bi-Polar disorder and was intoxicated on both prescription drugs and alcohol at the time he assaulted the victim in this case. As

noted in the PSR, Barrett's history of bi-polar disorder and substance abuse are both long and well documented prior to the commission of the instant offense. Barrett would ask this Court to consider these factors as possible grounds for departure pursuant to U.S.S.G. §§ 5H1.4 *(Physical Condition)*, as well as 5H1.3 & 5K2.13 *(Diminished Capacity)*. Barrett will present additional argument and evidentiary support for this request for downward departure in his Sentencing Memorandum to follow.

**Respectfully submitted,**

**/s/ George J. Parnham**

**GEORGE J. PARNHAM**
**Texas Bar# 15532000**
**440 Louisiana, Suite 200**
**Houston, TX 77002**
**(713) 224-3967**
**(713) 224-2815 (FAX)**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Defendant's Objections to the Pre-Sentence Report** was delivered via electronic filing to the Assistant United States Attorney in this cause and the U.S. Probation Officer in this cause, on this the 18th day of September, 2015.

*/s/ George J. Parnham*
GEORGE J. PARNHAM